UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH PRINGLE,

                Petitioner,

     -vs-

MARK BRADT, Superintendent
Attica Correctional Facility


                Respondent.

_____

**DECISION AND ORDER
No. 11-CV-06504**(MAT)

## I.   Introduction

*Pro se* Petitioner Kenneth Pringle ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered December 5, 2005, in New York State, Supreme Court, Erie County, convicting him, upon a plea of guilty, of Attempted Murder in the Second Degree (N.Y. Penal Law ("Penal Law") §§ 110.00, 125.25 [1]), Assault in the First Degree (Penal Law § 120.10[1]), and Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[2]).

## II.  Factual Background and Procedural History

### A.   Indictment

Under Erie County Indictment No. 02634-2004, Petitioner was charged with second-degree attempted murder, first-degree assault,

and second-degree criminal possession of a weapon.  The charges arose from an incident that occurred on October 25, 2004 on Loring Avenue in the City of Buffalo, New York, wherein Petitioner shot Jerome Crosby ("Crosby" or "the victim") in the face.  Trans. of 04/20/05 3-4.

### B.   Trial and Sentencing

At Petitioner's trial, Lieutenant Michael Quinn of the Buffalo Police Department ("BPD") testified that, on October 25, 2004, he responded to a call of a man shot on Loring Avenue.  Trial Trans. [T.T.] 22-23.  Lieutenant Quinn arrived at the scene approximately one minute after receiving the dispatch and observed a middle-aged black male, who was later determined to be Crosby, laying on the ground.  Crosby had been shot in the face.  T.T. 24.  Lieutenant Quinn asked Crosby who shot him, to which Crosby responded, "Kenny shot me.  Now get me a fucking ambulance."  T.T. 31.  Lieutenant Quinn testified that Crosby, who was curled up and face down, was trying to stop the bleeding from his head with his hands, was moaning, and was very agitated.   T.T. 31.   Lieutenant Quinn immediately dispatched the information about the shooter's name, and also put a "rush" request on the ambulance due to the seriousness of Crosby's injuries.  T.T. 31. Lieutenant Quinn told Crosby that an ambulance was on the way and to remain calm.  He asked Crosby if he knew "Kenny's" last name, to which Crosby responded, "they call him K-man . . . [a]nd his phone number is in

my cell phone." T.T. 32. Lieutenant Quinn passed this information along to the homicide detectives. T.T. 32.

Crosby was taken to Erie County Medical Center for treatment. T.T. 46. As a result of having been shot between the eyes, Crosby's right eye was damaged beyond repair and had to be removed. T.T. 48. Crosby wore an eyepatch for two or three weeks and eventually fitted with a prosthetic eye. T.T. 56.

At the trial, Crosby testified that he had gone to watch Monday Night Football on the evening of the shooting, arrived home at approximately 11:00 p.m., and pulled his vehicle into his neighbor's driveway because his wife was using their driveway. T.T. 41, 43. He testified that he exited his vehicle and began walking towards his home when Petitioner appeared and approached him. T.T. 43. According to Crosby, Petitioner said something about, "oh[,] you thought I was trying to sneak up on you? Some shit like that." T.T. 44. Crosby then heard a noise and fell to the ground, believing he had been shot in the cheek although he later discovered he had been shot between the eyes. T.T. 44, 45. Petitioner then nudged Crosby with his foot, and said, "[C]uz[,] you alright? You alright[,] [C]uz?" T.T. 54. Crosby did not see a gun or see a muzzle flash. T.T. 45. Crosby did not say anything to Petitioner and acted like he was dead because he was afraid Petitioner was going to shoot him again. T.T. 54. Crosby testified that he had known Petitioner from "the hood" for twelve

to fifteen years.   T.T. 48.   Crosby testified that Petitioner owed him "[a]bout sixty-two hundred" dollars for "a few autos" that Crosby had sold him.   Crosby had attempted to collect the money Petitioner owed him.   Crosby testified that earlier than 11:00 p.m. on the day of the shooting, he had asked Petitioner for the money and Petitioner agreed and told Crosby "he'd see [Crosby] the next day."   T.T. 49.

Crosby also testified that he met with Petitioner's lawyer in November 2005 and signed a statement indicating that he did not know who shot him.   T.T. 60.   Crosby testified that this statement was not true and that he had told Petitioner's lawyer that he did not know who shot him because he wanted Petitioner to remain out of custody so that he could exact revenge on Petitioner.   T.T. 61. Crosby testified that he wanted to keep the matter "in the streets" and that "[he] wanted to do what he did to me, I wanted to get him."   T.T. 62.   In an effort to pursue this type of street justice, Crosby "missed three court appointments" and "refused to testify at [Petitioner's] parole hearing."   T.T. 62.   Crosby testified that he subsequently changed his mind and decided not to proceed with that course of action.   T.T. 62.   Crosby decided to pursue Petitioner through legal means and cooperate with the People in prosecuting Petitioner.   T.T. 62-63.   He testified that, since the day of the shooting, he had never had a doubt that Petitioner was the person who shot him.   T.T. 63.

BPD Officer Monte Montalvo testified that on November 19, 2004, he was working the day shift when he stopped a sport utility vehicle because the driver was not wearing a seatbelt. T.T. 91-93. Subsequent to the traffic stop, Officer Montalvo learned through the police radio in his vehicle that there was a warrant out for Petitioner's arrest for attempted murder. T.T. 95. Officer Montalvo testified that he then took Petitioner into custody and Mirandized him. T.T. 95. Petitioner asked Officer Montalvo why he was being arrested, to which Officer Montalvo responded that it was because he had shot someone. T.T. 95-96. In response, Petitioner stated to Officer Montalvo, "if they thought I shot somebody, why wouldn't they come arrest me when it happened?" T.T. 96. Officer Montalvo transported Petitioner to police headquarters to be booked. T.T. 96. While at police headquarters, Petitioner asked to see a sworn statement that Crosby had provided to police after the shooting in which he identified Petitioner as the shooter. T.T. 97. Officer Montalvo asked Petitioner if he knew Crosby, to which Petitioner first responded that he did not and then indicated that "[he] may have heard of him." T.T. 98.

New York State Peace Officer Robery Vickery testified that, on November 22, 2004, he had a conversation with Petitioner about the shooting. Petitioner told Vickery that he did not shoot Crosby, that he was home the night of the shooting, and that he did not

even know Crosby and did not know why Crosby came up with his name. T.T. 107-108.

Detective Mark Vaughn of the BPD testified that he was assigned to investigate the shooting on Loring Avenue.  T.T. 117-118.  Detective Vaughn testified that after he learned of Petitioner's name, he looked up Petitioner's cell phone number through Crosby's cell phone at the scene of the crime.  T.T. 118. Later, Detective Vaughn called the number and asked for "Kenny". The voice on the other end of the call responded "what's up?" T.T. 119.  Detective Vaughn explained that he was investigating the shooting of Crosby, to which the person responded, "I don't know anything about the shooting" and then ended the call.  T.T. 119.

Detective Vaughn testified that he subpoenaed the victim's phone records and corroborated that "Kenny" had called Crosby earlier on the day of the shooting.  T.T. 120.  Detective Vaughn and other officers canvassed the area where the shooting occurred and discovered that some of the neighbors saw a "heavy set black male" running through their yards shortly after the time Crosby was shot.  T.T. 121.

At the close of the trial, Petitioner was found guilty as charged.  T.T. 211.  He was sentenced, as a second felony offender, to two determinate terms of twenty years imprisonment for the attempted murder and assault convictions, and a determinate term of fifteen years imprisonment for the weapon possession conviction.

All three terms were set to run concurrently.  Sentencing Mins. [S.M.] 7.

### C.    Post-Conviction Relief

On or about July 17, 2007, Petitioner filed a counseled motion, pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10, to vacate his judgment of conviction on the basis that he was denied effective assistance of counsel because counsel failed to call material exculpatory witnesses, failed to withdraw as counsel despite himself being a material witness in the case, failed to deliver coherent opening and closing arguments, and failed to effectively cross-examine witnesses.  See Pet'r Ex. A.[1]  The Erie County Supreme Court denied the motion on the merits on February 3, 2009, and leave to appeal was denied.  See Pet'r Exs. B, C.

### D.    Direct Appeal

On or about September 30, 2009, Petitioner, through counsel, appealed his judgment of conviction on the following grounds: (1) his confrontation rights were violated; (2) prosecutorial

---

[1]

At ¶ 3 of its Answer (Dkt. No. 3), which was filed on December 6, 2011, Respondent states that it "hereby submits to [the] Court the record of petitioner's conviction," and goes on to set forth the state court records submitted therein.  Dkt. No. 3 at ¶ 3.  Despite a July 9, 2012 notation on the docket sheet indicating "state court records received," there are no state court records in the Court's file except for duplicate copies of the trial transcript. It is unclear to the Court where the missing state court records are, or if a complete set was ever even received by the Court.  In any event, Petitioner has submitted copies of the relevant documents from his state court proceedings at Exhibits A-G of what he has titled, "Separate Memorandum."  See Dkt. No. 1. Because the Court is able to resolve the habeas petition with the state court records provided by Petitioner, the Court does so and refers to them throughout this Decision and Order as "Pet'r Ex." followed by the applicable exhibit.

misconduct in summation; (3) ineffective assistance of counsel; (4) the verdict was against the weight of the evidence and the evidence was legally insufficient to support his conviction; and (5) the sentence was unduly harsh, excessive, and severe. <u>See</u> Pet'r Ex. D (Pet. Br. on Appeal, Points I-V). The Appellate Division, Fourth Department unanimously affirmed the judgment of conviction, and leave to appeal was denied. <u>People v. Pringle</u>, 71 A.D.3d 1450 (4th Dep't 2010) (Pet'r Ex. E), <u>lv. denied</u>, 15 N.Y.3d 777 (2009) (Pet'r Ex. G)

### E.    The Habeas Corpus Petition

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) ineffective assistance of counsel; (2) prosecutorial misconduct in summation; (3) the judgment of conviction was based upon legally insufficient evidence and the verdict was against the weight of the evidence; and (4) Petitioner was denied his confrontation rights. <u>See</u> Pet. ¶ 11[a]-[d], Addendum, Grounds One-Four (Dkt. No. 1); Traverse (Dkt. No. 6).

For the reasons that follow, habeas relief is denied and the petition is dismissed.

### III. The Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted

the remedies available in the courts of the State. . . ."   28 U.S.C. § 2254(b)(1)(A);   see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999);   accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995).   "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts."   Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

## IV.   The AEDPA Standard of Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1)-(2).

## V.   Analysis of the Petition

## 1.   Petitioner's Prosecutorial Misconduct Claim is Procedurally Barred from Habeas Review by an Adequate and Independent State Ground

At ground two of the petition, Petitioner asserts, as he did on direct appeal, that prosecutorial misconduct on summation

deprived him of his right to a fair trial and due process.  See Pet. ¶ 11[b];  Addendum, Ground Two.  He claims that the prosecutor "impermissibly vouched for the credibility of Crosby as well as the police" and shifted the burden to the defense by asking the jury if Petitioner's attorney had given it any reason why Crosby would lie. Addendum at 6-7.  The Appellate Division denied this claim on a state procedural rule, finding that Petitioner failed to properly preserve it for appellate review.[2]  See Pringle, 71 A.D.3d at 1451. Consequently, as discussed below, this claim is procedurally defaulted from habeas review by this Court.

In general, habeas review of a federal issue is precluded when the last state court's ruling on the claim rested upon "a state law ground that is independent of the federal question and adequate to support the judgment."  Coleman v. Thompson, 501 U.S. 722, 729 (1991).  Respondent argues that the Appellate Division's ruling rested upon an adequate and independent state ground, namely, the contemporaneous objection rule codified at CPL § 470.05(2). Respondent contends that this prosecutorial misconduct claim accordingly is procedurally defaulted.  See Resp't Mem. of Law at 16-17.  The Court agrees.

---

[2]     In the alternative, the Appellate Division found that: "[i]n any event, that contention is without merit.  Although we agree with defendant that, in two instances, the prosecutor improperly vouched for the credibility of the victim, and such conduct is not to be condoned, we nevertheless conclude that it was not so egregious as to deprive defendant of a fair trial."  Pringle, 71 A.D.3d at 1451 (citation omitted).

Under the contemporaneous objection rule, a claim of error can be preserved for appellate review in two ways: by a party making a specific protest at a time when the trial court has an opportunity effectively to correct the error; or by the court expressly deciding the issue in response to a protest by the party claiming error on appeal. See CPL § 470.05(2). Although only a "firmly established and regularly followed state practice," James v. Kentucky, 466 U.S. 341, 348-49 (1984), may be interposed by a state to prevent subsequent review of a federal constitutional claim, the New York procedural rule applied by the Appellate Division in Petitioner's case — that a party must preserve an issue with a specific, contemporaneous objection — has been recognized as such a firmly established and regularly followed rule. See, e.g., Garvey v. Duncan, 485 F.3d 709, 714-715 (2d Cir. 2007) ("New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error.") (citations omitted). The Second Circuit has specifically held, with regard to claims of prosecutorial misconduct, that CPL § 470.05(2) constitutes an adequate and independent state ground. See Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996) (holding that defense counsel's failure to object to the prosecutor's comments in the opening statement and on cross-examination constituted an adequate and independent state ground).

Because there is an adequate and independent finding by the Appellate Division that Petitioner procedurally defaulted on this claim, Petitioner would have to show in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.  This he cannot do.

To establish "cause" for his procedural default, Petitioner must show that some objective external factor impeded his ability to comply with New York's procedural rules.  Murray v. Carrier, 477 U.S. 478, 488 (1986);  see also Restrepo v. Kelly, 178 F.3d 634, 638 (2d Cir. 1999).  Here, Petitioner alleges ineffective assistance of counsel as "cause" for the default.  See Traverse at 31-32.  However, in order to constitute cause, counsel's ineffectiveness must itself rise to the level of a constitutional violation.  See Edwards v. Carpenter, 529 U.S. 446, 477 (2000). Here, Petitioner's stand-alone ineffective assistance of counsel claim on this basis is meritless (see discussion *infra* at Section IV, 4) and thus cannot serve as cause for the default.  Given that Petitioner cannot establish cause for the default, this Court need not decide whether he also suffered actual prejudice as to this claim because federal habeas relief on the basis of a procedurally defaulted claim is unavailable unless both cause and prejudice are demonstrated.  See, e.g., Stepney v. Lopes, 760 F.2d 40, 45

(2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not Stepney showed prejudice.").

Turning to the "fundamental miscarriage of justice" exception, the Court notes that this requires a demonstration of "actual innocence."  See e.g., Calderon v. Thompson, 523 U.S. 538, 559 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992) ("The miscarriage of justice exception is concerned with actual as compared to legal innocence.")).  The Supreme Court has emphasized that the exception has a "narrow scope," Sawyer, 505 U.S. at 339. "To be credible," a claim of actual innocence must be based on reliable evidence not presented at trial[,]" Schlup v. Delo, 513 U.S. 298, 324 (1995);  accord Sawyer, 505 U.S. at 339.  The question of actual innocence "depends on whether it is more likely than not that no reasonable juror would have concluded that [Petitioner] engaged in conduct that meets the required elements of each of the charges." Sweet v. Bennett, 353 F.3d 135, 142 (2d Cir. 2003) (citing Bousley v. United States, 523 U.S. 614, 623 (1998)). Petitioner has not come forward with any evidence which would have undermined the proof of his guilt presented at trial.  The fundamental miscarriage of justice exception is thus not available to Petitioner.  The unpreserved claim of prosecutorial misconduct

therefore is procedurally defaulted from this Court's review and is dismissed.

**2.   Petitioner's Weight of the Evidence Claim is Not Cognizable and his Legal Sufficiency Claim is Procedurally Barred from Habeas Review by an Adequate and Independent State Ground**

At ground three of the petition, Petitioner argues, as he did on direct appeal, that: (1) the verdict was against the weight of the evidence; and (2) the evidence was legally insufficient to support his conviction insofar as the prosecution failed to prove beyond a reasonable doubt that Petitioner was the shooter.  See Pet. ¶ 11[c];  Addendum, Point Three.  The Appellate Division denied the former claim on the merits, and the latter on a state procedural ground because Petitioner failed to properly preserve the issue for appellate review.  See Pringle, 71 A.D.3d at 1450. For the reasons discussed below, neither of these claims warrant habeas relief.

**(A)   Weight of the Evidence Claim**

Petitioner's assertion that his conviction was against the weight of the evidence is not cognizable on habeas review.  A weight of the evidence claim is "an error of state law, for which habeas review is not available."  Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002); Correa v. Duncan, 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15[5]");  see also Maldonado v. Scully, 86 F.3d at 35

("assessments of the weight of the evidence . . . are for the jury and not grounds for reversal on appeal").  Thus, Petitioner's weight of the evidence claim is dismissed for failure to state a cognizable constitutional question.

### (B)   Insufficient Evidence Claim

Petitioner asserts that the evidence was legally insufficient to support his conviction insofar as the prosecution failed to prove beyond a reasonable doubt that Petitioner was the shooter. The Appellate Division, citing to People v. Gray, 86 N.Y.2d 10, 19 (N.Y. 1995), determined that Petitioner's challenge to the legal sufficiency of the evidence was unpreserved for appellate review.

In New York, an objection to the legal sufficiency of the evidence takes the form of a motion to dismiss.  People v. Thomas, 36 N.Y.2d 514 (1975).  The motion must be made in order for an insufficient evidence claim to be preserved for review, People v. Bynum, 70 N.Y.2d 858 (1987), and the motion must be made "at the close of the People's case."  Thomas, 36 N.Y.2d at 514.  Moreover, New York courts have consistently held that a general motion to dismiss is not sufficient to preserve the contention that the evidence at trial was insufficient to establish a specific element of the crime charged.  See Gray, 86 N.Y.2d at 20-22.

Here, Petitioner's legal sufficiency claim is procedurally barred due to the Appellate Division's reliance upon People v. Gray as an "adequate and independent state ground," to dismiss the claim

as unpreserved.  See Harris v. Reed, 489 U.S. 255, 260-61, 264 n. 10 (1989) (Federal habeas corpus review of a state conviction is prohibited if a state court judgment is based on an "adequate and independent state ground," such when the state court "explicitly invokes a state procedural bar rule as a separate basis for decision.").

As discussed supra, the Second Circuit recognizes New York's contemporaneous objection rule as an independent and adequate state procedural rule barring habeas review.  See e.g., Richardson v. Greene, 497 F.3d 212, 218 (2d Cir.2007).  "New York's preservation rule, codified at N.Y. Crim. P. Law § 470.05(2), 'require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error.'" Garcia v. Lewis, 188 F.3d 71, 78 (2d Cir.1999) (quoting People v. Luperon, 85 N.Y.2d 71, 78 (1995)); accord, e.g., Garvey v. Duncan, 485 F.3d 709, 714-15 (2d Cir.2007).  "A general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position.  Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error." Richardson, 497 F.3d at 218 (quoting Garvey, 485 F.3d at 714-15) (citation omitted).  Under these circumstances in which trial counsel moved

only for a general trial order of dismissal at the close of the People's case (T.T. 135-36), the Court finds that the Appellate Division relied upon a state ground that was both independent of the federal question and adequate to support the judgment when it rejected Petitioner's insufficiency of the evidence claim based upon the lack of a specific objection.

Because of the independent and adequate state procedural bar, the Court cannot review the sufficiency of the evidence claim unless Petitioner can show cause and prejudice, or that a fundamental miscarriage of justice would occur should this Court decline to consider the claim. Petitioner has made no such showing. He does not allege cause for the procedural default, and maintains that trial counsel properly preserved the issue for appellate review. See Addendum at 12-13. Moreover, any attempt that Petitioner has made to demonstrate prejudice as a result of the default by substantively arguing the merits of the claim in the Addendum to the petition and in his Traverse is defeated by the fact that the Appellate Division, despite its finding that the claim was not properly preserved, considered the claim, in the alternative, and determined that it lacked merit. Pringle, 71 A.D.3d at 1450. Finally, Petitioner has not adduced facts to support the miscarriage of justice exception. Therefore, his legal insufficiency claim is dismissed as procedurally defaulted.

3.    **Petitioner's Confrontation Claim is Meritless**

At ground four of the petition, Petitioner argues, as he did on direct appeal, that he was denied his constitutional right to confront witnesses against him.  Specifically, he argues that the admission into evidence of Crosby's statement to police at the scene of the crime identifying Petitioner as the perpetrator, and Detective Vaughn's testimony regarding what was discovered in the victim's subpoenaed phone records violated the Confrontation Clause, as interpreted by the Supreme Court in Crawford v. Washington, 541 U.S. 26 (2004).  See Addendum at Point Four.  The Appellate Division denied the portion of this claim related to the victim's statement on the merits,[3] and the deferential AEDPA standard of review therefore applies to said portion.  The Appellate Division did not specifically address the portion of the claim related to Detective Vaughn's testimony and, to the extent it is unclear whether said portion of the claim was passed upon by the Appellate Division, the Court reviews it de novo.  See DeBerry v. Portuondo, 403 F.3d 57, 68 (2d Cir. 2005) ("[W]e will review de novo if there was no adjudication on the merits.").  As discussed below, the claim, in its entirety, is meritless.

---

[3]

The Appellate Division held as follows: "[w]e reject the contention of defendant that he was denied his right of confrontation when Supreme Court admitted in evidence the victim's statement to the police identifying defendant as the perpetrator.  The victim testified that at trial and was subjected to extensive cross-examination concerning that statement.  We further conclude that the victim's statement was admissible under the excited utterance exception to the hearsay rule." Pringle, 71 A.D.3d at 1450 (citations omitted).

The Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004).   Petitioner argues that his confrontation right, as interpreted by the Supreme Court in Crawford, was violated when the trial court admitted in evidence the victim's statement to the police identifying Petitioner as the perpetrator of the crime.   This claims fails for several reasons.

Initially, the holding in Crawford is inapplicable to Petitioner's case because the declarant, Crosby, testified for the prosecution at trial and was available for cross-examination. See id. at 53-57.   The admission of the statement into evidence identifying Petitioner as the shooter did not violate the Confrontation Clause.

Moreover, statements properly classified as excited utterances are an archetype of the off-hand, non-testimonial statements that do not implicate the Confrontation Clause. See United States v. Harper, No. 05-CR-6068L, 2009 U.S. Dist. LEXIS 3593, 2009 WL 140125, at *4 (W.D.N.Y. Jan. 20, 2009) ("Statements admitted as excited utterances . . . are nontestimonial and thus do not implicate the Confrontation Clause."); Rivera v. Ercole, No. 05 Civ. 9411 (AKH), 2007 U.S. Dist. LEXIS 49534, 2007 WL 1988147 (S.D.N.Y. July 6, 2007) ("Excited utterances, generally, are not

testimonial."); <u>see also</u> <u>Michigan v. Bryant</u>, 131 S.Ct. 1143, 1157, 179 L. Ed. 2d 93 (2011) (stating that the logic justifying the excited utterance exception to the hearsay rule is consistent with the rationale for treating statements made in the course of an emergency as non-testimonial).   Here, Crosby's statement identifying Petitioner as the perpetrator of the crime was classified as an "excited utterance" exception to the hearsay rule and properly admitted at trial.   The statement made by Crosby to Lieutenant Quinn at the scene of the crime immediately after having been shot in the face fit comfortably within the excited utterance exception to the rule against hearsay testimony.   An "excited utterance" is made "contemporaneously or immediately after a startling event - which asserts the circumstances of that occasion as observed by the declarant." <u>People v. Edwards</u>, 47 N.Y.2d 493, 497 (1979).   Here, Lieutenant Quinn testified that at about 11:00 p.m. on October 25, 2004, he received a dispatch about a man shot on Loring Avenue.   T.T. 23.   He arrived at the scene of the dispatch "no more than one minute" later and discovered Petitioner, who had been shot in the face, laying on the ground.   T.T. 24. Lieutenant Quinn got out of his vehicle, knelt down next to Petitioner, and asked who shot him, to which Petitioner responded, "Kenny shot me.   Now get me a fucking ambulance."   T.T. 31. Lieutenant Quinn testified that Petitioner was trying to stop the bleeding to his head with his hands, "was moaning and was very

agitated." T.T. 31.   Lieutenant Quinn dispatched the information given to him by Petitioner and also put a "rush" on the ambulance due to the seriousness of Petitioner's injury.   T.T. 31-32. Lieutenant Quinn then asked Petitioner if he knew "Kenny's" last name, to which Petitioner responded, "they call him K-man.   And his phone number is in my cellphone." T.T. 32.   Petitioner remained agitated and was "repeatedly cursing and swearing, saying get me a fucking ambulance now." T.T. 32.   The New York Court of Appeals has held that statements -- such as those made by Crosby here -- made immediately after a victim is severely wounded by a gunshot are admissible as excited utterances.   People v. Cotto, 92 N.Y.2d 68, 78-79 (1998) (finding that trial court did not err in admitting victim's statements heard by police officer and EMT under excited utterance exception to hearsay rule where victim was severely wounded by gunshot from close range and attempted to escape additional shots fired at him by defendant, sustained severe injuries leading EMT to conclude he would die, victim was in great pain and condition worsened, and his physical shock and trauma never subsided); People v. Brown, 70 N.Y.2d 513, 520, 517 N.E.2d 515, 522 N.Y.S.2d 837 (1987) ("Given the sudden and violent nature of the event, the mortal wounds inflicted, the extreme pain and the unrelenting physical and emotional trauma caused thereby, and given, additionally, the brief time between the shooting and the statements, there can be no question that [the declarant's] initial

responses to his mother and his uncle made at the scene and on the way to the hospital were made while he was still under the influence of the excitement precipitated by an external startling event") (internal quotation omitted). Moreover, the statement made to Lieutenant Quinn was not in narrative form, but rather was a series of responses prompted by simple inquiries while Crosby was still under the influence of the startling event (i.e., Petitioner was bleeding from the head and was in an agitated state). Cf. People v. Johnson, 1 N.Y.3d 302, 308 (2003) (finding that testimony was improperly admitted as excited utterance where the challenged declaration was made to police in narrative form and in response to prompting an hour after the startling event, and the declarant had become more relaxed). Thus, the Court finds that the state court's adjudication of this portion of Petitioner's confrontation claim did not contravene or unreasonably apply clearly established federal law.  Nor can it be said that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  This portion of Petitioner's confrontation claim is meritless and is dismissed.

Similarly, Petitioner's claim that his right to confrontation under Crawford was violated when Detective Vaughn testified that he subpoenaed the victim's cell phone records and corroborated that Petitioner had called Crosby earlier on the day of the shooting is also meritless.  According to Petitioner, Crawford "requires that

the Phone Company employee who manufactured [the subpoenaed phone records] was required to testify at trial, in order for those phone records to be admissible." Traverse at 39. Petitioner's argument fails insofar as the record before this Court establishes that the victim's cell phone records were never admitted at trial. Rather, Detective Vaughn testified with respect to his investigation of the shooting, which included the information related to the victim's subpoenaed cell phone records. T.T. 118-120. Notably, the trial court posed no limitations on the scope or length of defense counsel's cross-examination of Detective Vaughn, and the defense was afforded the opportunity to impeach Detective Vaughn's credibility by specifically calling into question what he observed in the phone records. T.T. 125-128. Given that the phone records were never admitted into evidence at trial and insofar as Petitioner was permitted to cross-examine Detective Vaughn with respect to his observations of said records, the Court finds that Petitioner's right to confrontation, as articulated in <u>Crawford</u>, was not violated. Accordingly, this portion of Petitioner's confrontation claim is meritless and is dismissed.

In sum, Petitioner's confrontation claim does not warrant habeas relief and is dismissed in its entirety.

**4.   Petitioner's Ineffective Assistance of Counsel Claim is Meritless**

At ground one of the petition, Petitioner argues, as he did in the state courts, that he was deprived of the effective assistance

of counsel because counsel:  (1) failed to file pre-trial motions and request pre-trial hearings;  (2) failed to object to alleged confrontation violations; (3) failed to adequately prepare for trial; and (4) failed to object to prosecutorial misconduct on summation.  See Pet. ¶ 11[a], Addendum at Ground One; Traverse, Ground One.  Petitioner raised these claims in the state courts and they were denied on the merits.  See Pet'r Exs. A, D.  Because these claims were adjudicated on the merits in the state courts, the AEDPA applies, and, under that standard, Petitioner's ineffective assistance of counsel claim is meritless.

The relevant "clearly established law" here derives from Strickland v. Washington, 466 U.S. 668, 674 (1984), which provides the standard for inadequate assistance of counsel under the Sixth Amendment.  See e.g., Premo v. Moore, 131 S. Ct. 733, 737-38 (2011).  "To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'"  Premo, 131 S. Ct. at 739 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "To establish deficient performance, a person challenging a conviction must show that 'counsels representation fell below an objective standard of reasonableness.'"  Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 688).  "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 687).  "[T]here is no reason for a court deciding an ineffective assistance claim to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

### (A)   Failure to File Pre-Trial Motions and Request Pre-trial Hearings

Petitioner asserts that he received ineffective assistance of trial counsel because counsel failed to file pretrial motions and request pre-trial hearings. See Addendum at Ground One, Traverse at Ground One.  Petitioner has cast this claim rather broadly in his papers, however, he appears to be arguing, as he did on direct appeal, that counsel was ineffective because he failed to seek Mapp[4] and Huntley[5] hearings to suppress a statement he made to police when he was taken to police headquarters for booking, in which he first indicated he did not know the victim and then indicated he "may have heard of him."  He also faults counsel for

---

[4]

Mapp v. Ohio, 367 U.S. 643 (1961) (a hearing conducted to determine whether evidence was obtained in violation of petitioner's Fourth Amendment right to be free from unreasonable search and seizure).

[5]

People v. Huntley, 15 N.Y.2d 72 (1965) (a hearing to review the manner in which the police obtained statements from a criminal defendant).

failing to request a Sandoval[6] hearing.  See Traverse at 8-9. This claim is meritless.

Initially, with respect to counsel's failure to request hearings pursuant to Mapp and Huntley, Petitioner has not stated, with any particularity, how his constitutional rights were violated or otherwise explained the factual or legal basis for said hearings, such that counsel can be faulted for failing to pursue the aforementioned suppression hearings.  Further, his attempt to demonstrate prejudice accruing from counsel's alleged failure falls woefully short of the level required under Strickland.  He asserts in a conclusory manner that his statement to police, coupled with Crosby's trial testimony that Crosby knew Petitioner for twelve to fifteen years, "had an extremely prejudicial effect on [him] because it gave the jury the impression that [he] actually knew Crosby but was trying to distance himself from Crosby."  Traverse at 8.  This assertion is both vague and speculative, and the Court remains unconvinced that had counsel performed in the manner Petitioner wished him to with respect to seeking pre-trial hearings, there is a reasonable probability that the outcome of his trial would have been different.

With respect to counsel's alleged failure to request a Sandoval hearing, counsel's decision not to request same in all

---

[6]

People v. Sandoval, 34 N.Y.2d 371 (1974) (a hearing to address the admissibility of Petitioner's prior criminal convictions).

likelihood reflected a strategic decision not to place Petitioner in the witness chair.  Given that Petitioner had a criminal history (S.M. 3), that he ultimately did not testify at trial, and that there is no indication in the record that Petitioner wished to testify, the Court cannot find that counsel's decision not to pursue a <u>Sandoval</u> ruling was objectively unreasonable and prejudicial.

Accordingly, this portion of Petitioner's ineffective assistance of counsel claim is meritless, and is dismissed.

### (B)  Failure to Object to Alleged Confrontation Violations

Petitioner claims that counsel was ineffective because he failed to object to alleged confrontation violations. Specifically, he cites trial counsel's alleged failure to object to the admission of the victim's statement at the scene of the crime identifying Petitioner as the shooter and Detective Vaughn's testimony regarding the subpoenaed phone records.  This claim is meritless.

As discussed *supra* at Section IV, 3, Petitioner's right to confrontation was not violated by the admission of the victim's statement to Lieutenant Quinn and/or Detective Vaughn's testimony regarding the victim's subpoenaed phone records.  Petitioner therefore cannot demonstrate that it was objectively unreasonable for counsel to refrain from lodging an objection to the alleged

confrontation violations and that he was prejudiced by counsel's failure to do so.

Additionally, Petitioner's contention that counsel was ineffective because he failed to object to Lieutenant Quinn's testimony regarding the victim's statement also fails on its face insofar as the record reflects that, contrary to Petitioner's contention, trial counsel did, in fact, object to Lieutenant Quinn's testimony and said objection was overruled.  T.T. 31.

Accordingly, this portion of Petitioner's ineffective assistance of counsel claim is meritless and is dismissed.

### (C)  Failure to Adequately Prepare for Trial

Petitioner claims that trial counsel failed to adequately prepare for trial.  Specifically, he claims that counsel was ineffective because he failed to conduct pre-trial investigations and interview three potential witnesses: Jonathan Crosby (the victim's brother), Frank Navaroli, Jr. ("Navaroli") (a mutual friend of Petitioner and the victim), and Attorney Lisa Mitchell (who appeared, of counsel, for Petitioner's trial attorney at Petitioner's parole hearing on November 29, 2004).  Petitioner contends that counsel should have secured these individuals to testify at the trial because they possessed exculpatory information, namely information that the victim did not know who shot him.  This claim is meritless.

Initially, habeas courts are discouraged from second-guessing counsel's defense strategy, and "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 957 (1987). To support this claim, Petitioner points to the affidavits of Jonathan Crosby and Navaroli, as well as a typed affidavit from Attorney Mitchell which is not signed or notarized. Petitioner submitted these documents in support of his state court motion to vacate, which was denied. See Pet'r Ex. A. In these affidavits, Jonathan Crosby, Navaroli, and Attorney Mitchell, state, respectively, that they were told by the victim that he did not know who shot him and that each of these individuals relayed this information to Petitioner's attorney. Id. These affidavits suffer from defects of both form and substance. With respect to form, Attorney Mitchell's affidavit is not signed or notarized. With respect to the substance of these affidavits, the information contained therein contradicts the victim's admission at trial that, after the shooting, he lied about not knowing who the perpetrator of the crime was because he wished to keep Petitioner out of custody so that he could exact revenge on him. In this respect, counsel could have reasonably concluded that the testimony of Jonathan Crosby, Navaroli, and Attorney Mitchell was unreliable. Thus, it was not

objectively unreasonable for counsel not have pursued these individuals as witnesses.

Accordingly, this portion of Petitioner's ineffective assistance of counsel claim is meritless, and is dismissed.

### (D) Failure to Object to Prosecutorial Misconduct on Summation

Petitioner asserts that counsel was ineffective because he failed to object to improper comments made during the prosecutor's summation. Specifically, Petitioner claims that the prosecutor's question to the jury as to why Petitioner did not deny shooting Crosby when Detective Vaughn called Petitioner on Petitioner's cell phone (T.T. 164-165) improperly shifted the burden of proof, thereby warranting an objection from defense counsel. This contention is meritless.

In this case, Petitioner cannot demonstrate that he was deprived of the effective assistance of counsel based upon counsel's failure to object to the prosecutor's summation. The prosecutor's comment to the jury, which was posed as a rhetorical question, did not shift the burden of proof and was a fair comment on the evidence adduced at trial, such that an objection thereto would have been futile. See, e.g., Cuevas v. Henderson, 801 F.2d 586, 592 (2d Cir. 1986) (where prosecution's summation was appropriate, counsel's failure to object did not constitute ineffective assistance of counsel), cert. denied, 480 U.S. 908 (1987); Duncan v. Griener, 1999 U.S. Dist. LEXIS 348, *30, 97 Civ.

8754, 1999 WL 20890 at *10 (S.D.N.Y. Jan. 19, 1999) (since trial counsel's failure to object would have been fruitless, "the failure to so object is not evidence of ineffective assistance of counsel"). Detective Vaughn testified at the trial that, after the shooting, he placed a call to the phone number on the victim's cell phone for "K-man", that Petitioner answered the call and that, when Petitioner did so, Detective Vaughn asked to speak with "Kenny". In response, Petitioner said, "yeah, what's up." Detective Vaughn testified that he then explained to Petitioner who he was, that he was investigating the shooting of Crosby, and that he would like Petitioner to come downtown and speak with police. Petitioner did not deny shooting Crosby, but, instead, brusquely stated in response, "I don't know anything about a shooting" and hung up. T.T. 119. Thus, any objection to the prosecutor's rhetorical question asking the jury to ponder the evidence before it –– namely, that Petitioner denied knowing anything about the shooting and simply hung up when called by Detective Vaughn –– would have been useless, and thus it cannot be said that counsel's decision not to object was unreasonable and prejudicial. See Duncan, 1999 WL 20890 at *10 (dismissing petitioner's claim that his counsel was ineffective for failing to object to summation that allegedly shifted the burden of proof to the defense because "the summation did not attempt to shift the burden to the defense . . . . Thus this objection would have been fruitless and the failure to so

object is not evidence of ineffective assistance of counsel."). Moreover, the trial court's instructions to the jury (T.T. 177-178) clearly informed the jury that the State had the burden of proof and that a defendant is presumed to be innocent thus obviating any error from the prosecutor's comment. See, e.g., United States v. Walker, 835 F.2d 983, 988 (2d Cir. 1987); McEachin v. Ross, 951 F. Supp. 478, 482-83 (S.D.N.Y. 1997); Reeves v. Keane, 1993 U.S. Dist. LEXIS 5937, 92 Civ. 2499, 1993 WL 147538 at *7-8 (S.D.N.Y. May 5, 1993), aff'd mem., 23 F.3d 396 (2d Cir.), cert. denied, 512 U.S. 1241, 114 S. Ct. 2752 (1994); Partee v. Henderson, 1990 U.S. Dist. LEXIS 2734, 87 Civ. 1688, 1990 WL 26917 at *11 (S.D.N.Y. Feb. 28, 1990). Accordingly, this portion of Petitioner's ineffective assistance of counsel claim is meritless and is dismissed.

In sum, Petitioner's ineffective assistance of counsel claim does not warrant habeas relief. The state courts' adjudication of this claim was neither contrary to nor an unreasonable application of clearly settled Supreme Court law. Petitioner's ineffective assistance of counsel claim is dismissed in its entirety.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate

of appealability.   See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).   The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.   Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     August 21, 2012
           Rochester, New York